but were fairly within the discretion of the court. The answers were harmless, and show that the questions were without foundation and unreasonable.

I favor an affirmance

<hr/>

(158 App. Div. 258.)

### TOWN OF QUEENSBURY v. HUDSON VALLEY RY. CO.

### PEOPLE ex rel. BLACKBURN, Highway Com'r, v. SAME.

(Supreme Court, Appellate Division, Third Department. July 8, 1913.)

STREET RAILROADS (§ 38*)—FRANCHISE TO USE BRIDGE—DUTY AS TO REPAIRS.
    The provision of the franchise granted a street railroad company by towns to use their bridge, that it "shall strengthen the stringers of said bridge to the amount necessary to carry safely the cars of said company and any other weight which may at the time be on said bridge," contemplates that it shall strengthen the bridge to the extent necessary to take care of the increased weights from its use, so that, it subsequently increasing the weight of its rolling stock and loads, it must, to take care thereof, strengthen the stringers it has put in, if necessary, by trusses or supports.
    [Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 99–111; Dec. Dig. § 38.*]
    Kellogg, J., dissenting in part.

Appeal from Special Term, Washington County.

Action by the Town of Queensbury against the Hudson Valley Railway Company, and proceeding by the People, on the relation of John Blackburn, Commissioner of the Highways of the Town of Moreau, against said company, consolidated by stipulation. From the judgment (75 Misc. Rep. 197, 135 N. Y. Supp. 200), plaintiff and relator appeal. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Jenkins & Barker, of Glens Falls, for appellant Town of Queensbury.

Wm. S. Ostrander, of Saratoga Springs, for appellant Blackburn.

James McPhillips, of Glens Falls, for respondent.

SMITH, P. J. The Hudson river forms the boundary between the town of Queensbury, Warren county, and the town of Moreau, Saratoga county. The village of Glens Falls, in the town of Queensbury, and the village of South Glens Falls, in the town of Moreau, adjoin one another on opposite sides of the river, and are connected by a highway which passes over a highway bridge erected in 1890. In 1896 a franchise was granted by said towns to the Glens Falls, Sandy Hill & Ft. Edward Street Railroad Company to use said bridge upon complying with certain requirements, one of which was as follows:

"The said company shall strengthen the stringers of said bridge to the amount necessary to carry safely the cars of said company and any other weight which may at the time be lawfully upon said bridge."

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereupon said railroad replaced two lines of stringers under the roadway of the bridge upon its west side, where the track was to be located. The old stringers were 8 inches in height and weighed about 17¼ pounds per running foot, while the new stringers were 12 inches in height and weighed about 40 pounds per foot. The track was then laid above the new stringers, and cars were operated thereon without any objection raised until 1905. In 1901 said railroad was merged in and became a part of the system of respondent, the Hudson Valley Railway Company, which has continuously used said bridge from that time. In 1905 complaint was made regarding the condition of the bridge, and by the direction of the State Board of Railroad Commissioners it was examined by an engineer. This expert recommended certain repairs and alterations as necessary to render the bridge safe under the then existing loads, and drew up plans and specifications therefor. A controversy arose as to who should pay for such repairs and alterations, and in 1907 the town of Queensbury commenced an action against respondent, alleging that its use of the bridge created a danger, on account of the great weight of its cars which the bridge was unable to sustain with safety. Judgment was demanded that the respondent be compelled to remove its track and to cease to operate its cars over the bridge. About the same time the commissioner of highways of the town of Moreau obtained a show-cause order for a writ of mandamus to require the respondent to strengthen said bridge, so as to bear safely the weight of respondent's cars in addition to the usual highway traffic over the bridge. Thereafter said action and special proceeding were in effect consolidated by a stipulation, signed by all parties, to the effect that respondent should proceed at once to make the needed repairs, and that all questions as to the right to use said bridge and the liability of any or all parties for the repairs to be made should be decided later in said action and proceeding. Evidence was thereafter taken at Special Term, and a decision rendered by the court, in which it was held that the total cost of repairs, the sum of $10,294.11, which had been expended by the respondent, should be apportioned as follows: That the cost of two additional lines of stringers under the tracks and additional cross-supports for the roadway amounted to 26.22 per cent. of the total amount expended, or $2,699.12, for which the respondent was liable, but that the cost of the balance of the work, amounting to $7,594.99, should be borne equally by said towns. Judgment was thereupon entered against each town in the sum of $3,797.49 in favor of respondent, with interest and costs, from which judgment appeals have been taken by the towns of Queensbury and Moreau.

It appears that the bridge in question was a pin-connected, single span, parabolic truss bridge, 177 feet 10 inches long, of standard make and construction, although in some respects not quite up to the most recent standards of bridge construction for heavy highway traffic. There is no evidence, however, that the bridge as originally constructed would not have been, at the time of the repairs in 1907, a safe and satisfactory structure to carry both the highway travel and also cars of the type that were used by the original owner of the franchise

in 1896 and for some years thereafter. Such cars ranged in weight from 11 to 15 tons, and no freight cars were then in operation. Prior to 1907 the cars operated over said bridge had increased in weight and carrying capacity, so that in 1907 cars weighing from 11 to 30 tons and motors weighing 40 tons and hauling each a freight car weighing 20 tons were used. Thus the maximum weight supported by said bridge at any one time on account of respondent's rolling stock has increased from about 15 tons to more than 60 tons. The repairs which were concededly necessary in 1907, if the bridge was to be subjected to such a user, consisted principally of an extra third truss running from pier to pier underneath the floor of and along the center of the bridge, and it is to be relieved from paying for this principal item of repairs that the said two towns have appealed.

The contention of the appellants is, inasmuch as this bridge was rendered unsafe by the excessive load placed thereon by the respondent, and was adequate for all highway purposes except the use to which it was subjected by the defendant, that the defendant is bound, both under the terms of franchise and of the statute, to pay all costs of strengthening, or, if necessary, rebuilding, the said bridge to sustain the load which the defendant itself should place thereupon. The claim of the respondent, however, is that there is no obligation under the statute for it to rebuild or strengthen this highway bridge, which is used in common by the defendant with the public, and that under the franchise it was simply bound to replace the stringers, and for the expense of replacing the stringers the defendant has already been charged by the judgment. It seems clear to me, however, that the franchise should have a broader interpretation. Replacing the stringers was apparently all that was necessary to support the load that was contemplated in the use of the bridge by the defendant road or its predecessor, to whose obligations it succeeds. That the duty was a continuous one, and applied to all loads that might thereafter be placed upon the bridge by the defendant, is not questioned. As I read the franchise, the duty "to strengthen the stringers of said bridge to the amount necessary to carry safely the cars of said company and any other weight which may at the time be upon said bridge" is not satisfied by simply replacing the stringers, which under the form of construction then existing would not be sufficient to carry the greatly increased load which defendant later placed upon the bridge; but those stringers must be strengthened, if necessary, by trusses or supports in such a way as to make the bridge safe for the use of the public in connection with the use to which the defendant might put it. It was clearly the intention of the parties that the increased load should be taken care of by the defendant, and such intention expresses only the natural obligation of the defendant, in the light of which this franchise must be construed. Inasmuch, therefore, as the repairs were rendered necessary solely for the increased weight placed upon the bridge by the defendant, the towns of Queensbury and Moreau were not liable to make any contribution thereto, and the judgment should be modified, so as to place the entire cost of construction upon the defendant, and to charge no part thereof to either of the towns ap-

pealing. In view of the construction which I deem should be given to the franchise itself, it is unnecessary to discuss what obligation may exist upon the defendant to bear the entire cost of the repairs under the Railroad Law of the state.

Judgment modified as per opinion, and, as modified, affirmed, with costs to each appellant. All concur, except—

JOHN M. KELLOGG, J. (dissenting). The defendant used the westerly part of the bridge in common with the public. The provision in the franchise only required it to strengthen the bridge so that it would safely carry the cars and any other weight lawfully upon it. It was assumed, and I think very properly at the time, that strengthening the stringers under the tracks was a fair compliance with the requirement; but the agreement was a continuing one, and not only required the company to maintain the stringers, but, when read with the provisions of law applicable to the case, required it to keep its half of the bridge in safe condition and repair. Nineteen and two-tenths per cent. of the expenditures in question were actually expended in putting additional stringers under the railroad track. It is evident that the defendant must pay that. A new truss was put through the center of the bridge, and stringers upon the easterly side, and the bridge was generally strengthened. Perhaps it would be equitable to charge upon the towns the cost of the stringers upon the easterly side of the bridge; but the record does not indicate such cost, and neither party deemed it important to consider that item separately. We may therefore disregard it.

It is evident from the reports of the engineers that it was considered that the bridge must be strengthened, not only under the railroad tracks, but upon both sides. The railroad company, before the litigation began, expressed a willingness to strengthen and make safe its half of the bridge. The real controversy was whether it must strengthen the whole bridge. Heavy traffic, aside from that of the railroad, passed over the bridge, and the other traffic caused it to shake and vibrate much more than did the passing of the cars. I think the railroad company is fairly obligated to keep in proper condition the westerly part of the bridge, excluding the sidewalk, and the towns are to maintain the easterly part and the sidewalks. In my judgment the railroad company should be charged 19.2 per cent. of the entire cost. The remaining 80.8 per cent. should be charged, one half upon the railroad company and the other half upon the towns, each town paying one-half thereof, thus making the railroad's share 59.6 per cent. and the share of each town 20.2 per cent.

The judgment should be modified accordingly.